IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| PHILLIP BARRINEAU,            ) | |
| ) Criminal No. 2:06-cr-00733-DCN-1 | |
| Petitioner,      ) | |
| ) | |
| vs.           ) | |
| ) | |
| UNITED STATES OF AMERICA,    )    **ORDER** | |
| ) | |
| Respondent.     ) | |
| _____ ) | |

This matter is before the court on petitioner Phillip Barrineau's ("Barrineau") motion to vacate, set aside, or correct his federal sentence pursuant to 28 U.S.C. § 2255. The government filed a motion to dismiss, or in the alternative, a motion for summary judgment. For the reasons set forth below, petitioner's motion is denied, and the government's motion for summary judgment is granted.

## I. BACKGROUND

Petitioner pled guilty to conspiracy to distribute 50 grams or more of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). As part of the plea agreement, the government dismissed two other counts, and petitioner waived his right to appeal. The court sentenced petitioner to 97 months of imprisonment. On September 21, 2009, petitioner filed this motion based on ineffective assistance of counsel. The government responded to petitioner's motion on November 9, 2009, and moved to dismiss the claim, or in the alternative, for summary judgment. Counsel was appointed on June 8, 2010, and filed a reply to the government's response on November 19, 2010. An evidentiary hearing was held on November 30, 2010.

According to Barrineau, his defense counsel initially estimated that he would receive a sentence of approximately 60 months, which was the mandatory minimum in his case. Thereafter, a guidelines enhancement for child endangerment was included in petitioner's Presentence Investigation Report ("PSIR"), increasing the advisory guidelines range to 97 to 121 months. The children allegedly endangered belonged to Barrineau's co-defendant and girlfriend. Barrineau's counsel initially filed a written objection to this enhancement alleging that the children did not live at petitioner's house nor were ever present at his home during the time methamphetamine was being cooked there. Barrineau then insisted that his attorney withdraw this objection for fear that it might increase his girlfriend/co-defendant's sentence. He also refused to cooperate with the government and helped his girlfriend cooperate and hopefully receive a lighter sentence, so that she could stay home with her children. Petitioner was sentenced to 97 months in prison, the bottom of the advisory Sentencing Guidelines recommended under the circumstances.

Defense counsel informed petitioner that his sentence might be reduced if he successfully completed a 500 hour drug treatment program while in prison. Once he reported to prison, Barrineau learned he was ineligible for the drug program because of the enhancement for child endangerment. He then became concerned about the enhancement and its effect on his overall sentence and began to contact his attorney regarding other means to reduce his sentence. After many months, his defense attorney informed him and his family and friends that there was nothing more that could be done to reduce his sentence. Petitioner filed the instant motion seven months later.

## II.  STANDARD OF REVIEW

Petitioner proceeds under 28 U.S.C. § 2255, which provides, in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Barrineau bears the burden of proving the grounds for collateral attack by a preponderance of the evidence.  Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

Summary judgment is appropriate when, after considering the full evidentiary record, there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, the burden for summary judgment may be discharged by "pointing out to the court that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The nonmovant must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322.  Evidence should be viewed in the light most favorable to the nonmoving party and all inferences drawn in its favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A mere "scintilla" of evidence will not preclude summary judgment, however.  Id. at 262.

### III.  DISCUSSION

####   A. Jurisdiction: Timeliness of Petitioner's Motion

Motions pursuant to 28 U.S.C. § 2255 must be filed within one year of the latest of four distinct triggers laid out in the statute. The two triggers relevant to this motion are § 2255(f)(1), the date on which the judgment of the conviction became final, and (f)(4), the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. Petitioner's conviction became final after the period for filing a writ of certiorari expired, 90 days after petitioner's judgment and conviction order was filed on May 22, 2007. Clay v. United States, 537 U.S. 522, 524-25 (2003). Barrineau did not file his motion until September 21, 2009, more than a year after his conviction became final. Petitioner argues that February 2009, the time at which his defense counsel informed him that all other options were unavailable, should be the appropriate trigger under § 2255(f)(4). The government argues that petitioner did not exercise the requisite due diligence to satisfy (f)(4) because he did not contact his attorney at all until March of 2008 and could have contacted his attorney during the three months he was on bond before reporting to prison.

For the purposes of § 2255(f)(4), the relevant date is when the petitioner *could have* discovered, through due diligence, the facts supporting his claim. This inquiry does not turn on whether the petitioner exercised due diligence immediately after his conviction or any other time prior to the date on which he could have discovered the relevant facts. In this case, the relevant fact is when his attorney concluded that he could not do anything further to reduce petitioner's sentence.

Petitioner first spoke with his attorney about a sentence reduction in March of 2008. According to Barrineau, he did not contact his attorney earlier because he believed he would be able to enroll in a drug program and reduce his sentence. It was not until after petitioner was incarcerated that he learned he was ineligible for the drug program due to the enhancement for child endangerment. This was a new fact because petitioner had been told that he should be able to enroll in the drug program by his attorney. The court had also informed petitioner that it would recommend him for the 500 hour drug treatment program. After learning that he was ineligible, petitioner contacted his attorney. Petitioner's attorney, who was aware of several pending guideline amendments, allegedly informed Barrineau that he was still looking into other ways to reduce his sentence. Barrineau, his sister, girlfriend, and former employer allegedly made numerous calls to his attorney after this date but were not informed until February 2009 that the attorney could do nothing more.

The combination of petitioner's first notice that he was ineligible for the drug treatment program and his attorney's inability to find other means to reduce his sentence were not ascertainable until February 2009. Due to the above factors, petitioner's delay was not unreasonable. See Wims v. United States, 225 F.3d 186, 190 (2d Cir. 2000). Barrineau filed his § 2255 claim in September of 2009, within one year of the February 2009 trigger date under § 2255(f)(4). Thus, petitioner's claim is not time barred, and this court has jurisdiction.

### B. Claim for Relief: Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance

5

of Counsel for his defense." The right to counsel guaranteed by the Sixth Amendment includes the right to the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984) (citing McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). In Strickland, the Supreme Court outlined counsel's responsibility to provide effective assistance and established a two-part test for determining whether counsel was ineffective. Counsel is ineffective if his efforts were objectively unreasonable as measured against prevailing professional norms and counsel's errors were prejudicial. Id. at 688-94. The court may consider either prong first and need not consider the other prong if the first is insufficiently established. Id. at 697.

Prejudice exists if there is a reasonable probability that, but for counsel's deficient performance, the proceeding would have had a different result. Id. at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." Id. Petitioner claims that his attorney was ineffective because he: 1) failed to request a non-guidelines sentence; 2) advised petitioner to forego his appeal rights in his plea agreement and failed to pursue a reduction in his sentence; and 3) counseled petitioner to accept an unfavorable plea deal.[1]

### 1. Failure to Request a Non-Guidelines Sentence

Petitioner contends that his attorney should have requested a downward variance based on the factors in 18 U.S.C. § 3553(a). The grounds on which petitioner claims that counsel should have requested a variance include: 1) absence of child endangerment; 2) any favorable factors included in the PSIR; and 3) disparity of the sentence between similarly situated defendants.

---

[1] The final claim was added during the hearing. Another claim, failure to object to an enhancement, was withdrawn prior to the hearing.

6

Petitioner's attorney testified that he did not make a § 3553(a) motion for a variance because he: 1) believed he was prohibited by his client from addressing the child endangerment issue and 2) concluded there was no other good faith basis to request a variance.  Barrineau insisted that his attorney withdraw his objection to the child endangerment enhancement in order to help his girlfriend receive a lower sentence.  It was objectively reasonable for his attorney to believe that he would be prevented from addressing this same issue in a § 3553(a) motion.  Petitioner's sacrifice of his objection to the enhancement in order to reduce his girlfriend's time in prison prevented his attorney from arguing this issue for other purposes.  Counsel's actions were not objectively unreasonable – he was following the instructions of his client, as he is ethically required to do.

The attorney did not believe there were other good faith reasons for asking for a downward departure outside of the areas he was prohibited from addressing.  This is not objectively unreasonable considering that all of the other factors were included in the PSIR, and the court stated that it considered the PSIR and all statutory factors.  See United States v. Johnson, 445 F.3d 339, 345 (4th Cir. 2006) (finding that a district court need not specifically state that it addressed the § 3553(a) factors, but mentioning such factors may be sufficient to establish "adequate and proper consideration.").  Defense counsel noted that the Sentencing Guidelines were advisory, and the court reiterated this fact, alleviating defense counsel from needing to object to any potential misunderstanding on the part of the court.  United States v. Mendoza-Mendoza, 597 F.3d 212, 215 (4th Cir. 2010) (holding that the district court incorrectly believed it was obligated to follow the Sentencing Guidelines unless other

reasons for departure are given). Specific factors were discussed at sentencing, including Barrineau's work history, rehabilitation efforts, and the future sentencing of his co-defendant.

Even if counsel were somehow deficient in the manner in which he raised these arguments, petitioner has failed to show that his sentence would have been more lenient had his attorney made a specific § 3553(a) motion on the grounds already included in the PSIR. See, e.g., United States v. Morel, No. 07-4899, 2010 WL 2900318, at *5 (S.D.N.Y. July 22, 2010) (holding that failure to make a § 3553(a) objection was not "ineffective assistance" when petitioner failed to point to factors that would have lead to a variance); see also Chkir v. United States, No. 08-0021, 2010 WL 2105465, at *2, *5 (S.D. Ohio May 25, 2010); United States v. Moreira, No. 06-20021, 2010 WL 4025032, at *5 n.11 (D. Kan. Oct. 13, 2010). To demonstrate Strickland prejudice, petitioner must show that, but for the asserted ineffective assistance, it was "reasonably probable" that "his sentence would have been more lenient." Strickland, 466 U.S. at 694; Royal v. Taylor, 188 F.3d 239, 248-49 (4th Cir. 1999). Therefore, petitioner has failed to establish prejudice.

Barrineau now points to the disparity between his sentence and his co-defendant's sentence as grounds that his attorney should have argued in order to reduce his sentence. Petitioner's girlfriend had not been sentenced at the time Barrineau was sentenced. Barrineau refused to make the objection to the child endangerment enhancement because he did not want his girlfriend to receive a sentence of incarceration, even if it would have given him a lower sentence if the objection had been sustained. Petitioner's strategy was successful in that his

girlfriend ultimately received a probationary sentence.  Creating circumstances to allow his girlfriend to receive a lower sentence by forgoing arguments that could have reduced his own sentence created the disparity of which Barrineau now complains.  One of the purposes of the Sentencing Guidelines is to "avoid disparity" on a national level.  United States v. Parish, 08-4723, 2009 WL 1069324, at *1 n.2 (4th Cir. April 16, 2009) (per curiam); see also United States v. Richardson, 195 F.3d 192, 198 (4th Cir. 1999).  While defense counsel did point to potential sentencing consideration that petitioner's girlfriend might receive, counsel was not objectively unreasonable for failing to argue this disparity as a grounds for a variance, since it was a disparity created by petitioner and might have required counsel to argue facts his client had forbidden him from addressing.

### 2.  Advice to Forego Appeal/Failure to Pursue Sentence Reduction

Defense counsel did not advise Barrineau to appeal his sentence because he had waived his right to appeal in his plea agreement.  Petitioner did not ask his attorney to file an appeal until far after the deadline for such a filing had passed.  Furthermore, the attorney believed an appeal could have jeopardized the co-defendant's sentence, which was at odds with petitioner's wishes.  Thus, the attorney's failure to file an appeal was not objectively unreasonable.

It is unclear what other means petitioner claims his attorney failed to pursue to reduce his sentence.  The attorney informed petitioner that he was looking into ways to "shave off" some of petitioner's time based on potential amendments to the Sentencing Guidelines which, if enacted, might have affected petitioner's guidelines or by "getting rid of the enhancement."  The attorney looked into these issues and

determined that no such means were available to Barrineau.  Since there were no other available means to reduce petitioner's sentence, there is no prejudice to petitioner.  Thus, counsel was not ineffective on this ground.

### 3. Advice to Accept an Unfavorable Plea Deal

At the evidentiary hearing, Barrineau claimed that counsel was ineffective because he advised him to take a plea deal which:  1) waived his right to appeal; 2) only provided a benefit of two hundred dollars in special assessment fees by dropping two counts; and 3) would reduce the sentence if petitioner cooperated, which he had continually refused to do.  Petitioner knowingly and voluntarily entered into the plea agreement, as demonstrated in the plea hearing on January 3, 2007.  During the plea colloquy, the Assistant United States Attorney read the appellate waiver into the record.  Petitioner agreed that those were the terms of the agreement, he understood them, and had plenty of time to talk to his attorney about the terms of his plea agreement before signing it.  Barrineau did not have to pay two one hundred dollar special assessments based on the dismissal of two counts against him.  If petitioner did not believe this was a worthwhile bargain, he was fully informed and capable of refusing to sign the agreement.  It would not be unreasonable for his attorney to have believed an appeal that potentially would jeopardize his girlfriend's sentence would have relatively little value to petitioner.  Thus, counsel's actions were not objectively unreasonable.  See United States v. Calderon, No. 05-0151, 2007 WL 1574541, at *9 (N.D. Okla. May 29, 2007) (holding that appellate waiver was not objectively unreasonable when defendant received some benefit and prejudice could not be shown).

## IV.  CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is **DENIED** and the government's motion for summary judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is denied because petitioner has failed to make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**CHIEF UNITED STATES DISTRICT JUDGE**

**January 13, 2011**
**Charleston, South Carolina**

11